UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

THE NIELSEN COMPANY (US), LLC,                :

                        Plaintiff,      :

          - against -                                  :

SUCCESS SYSTEMS, INC.,                         :

                        Defendant.     :

                              **DISCOVERY ORDER**
------------------------------------------------------------x
                              11 Civ. 2939 (FM)
SUCCESS SYSTEMS, INC.,                         :

                        Plaintiff,      :

          -against-                                    :

SCANNING SOLUTIONS, LLC,                   :

                        Defendant.     :

------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

        By letter dated June 12, 2013, counsel have correctly (and, thankfully, rather gently) noted that the Court has yet to rule concerning numerous issues that they raised in letters submitted to the Court in early March. I regret that overly lengthy delay. In any event, my rulings with respect to the outstanding issues are as follows:

I.        <u>Information Concerning Nielsen Stores Participating in the Automation Project</u>

        In its third claim for relief, Nielsen alleges, in substance, that it was fraudulently induced to enter into its contract with Success based on misrepresentations that Success and its officers made. After concluding that Success could not successfully complete the project, Nielsen entered into a substitute contract with Scanning Solutions.

In June 2012, Success sought discovery concerning the stores that Nielsen and Scanning Solutions recruited for the automated reporting project after Nielsen terminated its relationship with Success. Success represented that it needed this information so that it could contact the stores to determine what disparaging remarks regarding Success may have made to store personnel, but I denied the application on the ground that it was a "fishing expedition."

In its March 1 letter, Success essentially renews its request, asking that it be provided with a list of Nielsen's current automated reporting stores. This time, however, Success advances a different rationale. First, Success contends, in substance, that the project it was asked to undertake was a fool's errand because 1,222 Nielsen stores could not have been converted to automated reporting within the contractually-required time frame. Success reasons that evidence of Nielsen's own inability to reach that target even after it awarded the substitute contract to Scanning Solutions will help to prove that assertion. Success also states that the list will enable it to verify Nielsen's representation that it did not recruit any of the "Success Stores" after Nielsen and Success went their separate ways.

Nielsen counters that its list of current stores is irrelevant because there may be many reasons why a Nielsen store is no longer part of the automated reporting program several years after Success was to have completed the conversion of the stores. Nielsen also notes that Success has failed to identify any "Success Stores" that allegedly were wrongfully made part of the Nielsen automated reporting project after Nielsen terminated its agreement with Success.

I find that the second rationale proffered by Success in March is alone a sufficient basis for requiring disclosure of the list of stores currently participating in the Nielsen automation project. Neither rationale, however, would justify attempts by Success or its counsel to contact those Nielsen stores. Accordingly, Nielsen is directed to turn over the list, but may designate it as "Highly Confidential," i.e., for "attorneys' eyes only," pursuant to paragraph 1.4 of the Protective Order previously entered in this case. Success' counsel further is admonished that it may not contact any of the stores on Nielsen's list.[1]

---

[1] In a related request, Success sought documents concerning a survey that Nielsen conducted to determine how many Nielsen stores would be amenable to converting to automated reporting. By letter dated March 11, 2013, Nielsen indicated that it was gathering those documents and intended to produce them. I assume that this has already occurred. Accordingly, in this Discovery Order, I have not further considered the request for Nielsen's survey-related information.

II.  Information Concerning Number of Success Stores
     Prior to Commencement of the Automation Project

Nielsen contends that it was induced to enter into its contractual arrangement with Success based, at least in part, on the fraudulent misrepresentation that Success had a customer base of 1,700 stores. In response to Nielsen's document requests concerning that representation, Success has produced 28 "banker's boxes" of documents, as well as some binders of invoices. Nielsen contends that its initial inspection of that production confirms that Success was not doing business with 1,700 stores in August 2010, despite the fact that it had so represented in response to Nielsen's RFP. Since Success is unwilling to stipulate that it had fewer than 1,700 stores, Nielsen indicates that it plans to establish the falsity of Success' representation through the continued deposition of Scott Tarlow, Success' president and chief executive officer. To that end, Nielsen requests that Success be required to produce all of the banker's boxes at the deposition so that it can avoid "having hundreds of folders copied." Nielsen also requests that Success be required to copy 44 specific files that it has identified.

As to the first of Nielsen's requests, I agree that it would be unduly burdensome to require Success to bring its entire document production concerning its stores to the continued Tarlow deposition. Although the term "banker's box" can mean different things to different people, assuming that the boxes in question are the 10" x 12" x 15" boxes that law firms often bring to Court, Nielsen's request might necessitate bringing as many as 70,000 pieces of paper to the deposition. Even if many of the boxes are only partially filled, the request on its face is unreasonable, and it is therefore denied.

Turning to the copying issue, Success suggests that the dispute regarding the copying of most of the 44 files is minor and arises out of the fact that Nielsen's copying vendor of choice is also the in-house copying vendor for Robinson & Cole, Nielsen's counsel in this case. That problem is easily resolved. If it has not done so already, the vendor will be required to copy the documents at a facility other than Robinson & Cole, and to ensure that Success' original documents are returned directly to either Success or its counsel. Stated somewhat differently, Robinson & Cole may not take possession of the original documents at any time.

Success objects to the copying of two of the files on the ground that their contents relate to "contractual relationships with stores by a one-time spinoff of [Success] that predated the Nielsen relationship." Success further maintains that the "contracts . . . never went anywhere and simply have no relationship to the present litigation." Success therefore has represented that it produced those files by mistake and is not seeking to take credit for them as part of its customer base. In light of that representation, Success need not produce the two files.

III.  Scanning Solutions Interrogatories

The substitute arrangement that Nielsen entered into with Scanning Solutions is the subject of a second lawsuit which has now been consolidated into the suit originally brought by Nielsen. In that lawsuit, Success contends, inter alia, that Scanning Solutions tortiously interfered with its existing contractual relationships with 502 stores. Scanning Solutions has served interrogatories related to the Success claims and contends, in its counsel's March 1 letter, that certain of the responses served by Success are deficient. The interrogatories at issue are as follows:

a.  Interrogatory Three. Interrogatory Three seeks extensive information concerning each of the 502 stores including the name of the persons with whom Success dealt, the date of any agreement with the store, the equipment provided, the revenues derived, and whether the agreement remains in effect.

b.  Interrogatories Four Through Ten. In these seven interrogatories, Scanning Solutions seeks similarly detailed information for each store with which Success allegedly had either "an ongoing business relationship" or a "contractual relationship" as of three separate times: October 1, 2010 (when Success began its work on the conversion project), April 1, 2011 (when Success ceased that work) and currently. Scanning Solutions also seeks such information for any stores for which Success "received compensation for providing and installing scanning equipment and software."

c.  Interrogatory Eleven. This interrogatory seeks information concerning the basis for Success' allegation that Scanning Solutions had "full knowledge" of the service agreements that Success entered into with the 502 stores.

d.  Interrogatories Twelve Through Sixteen. Although Scanning Solutions characterizes these interrogatories as an effort to identify the Success stores with which it allegedly interfered, the interrogatories actually seek a great deal more information concerning any such business relationships. For example Interrogatory Sixteen seeks for each such store, "the name and address of the store, the persons affiliated with the customer or store with whom [Success] dealt, the date [Success] and the store began a business relationship, the nature of that business relationship" and any agreements related thereto, "when Scanning Solutions allegedly persuaded the store to discontinue business with Success," the details of any relevant communications, and any related documents.

e.  Interrogatory Seventeen. Interrogatory Seventeen asks Success to identify the trade secrets Scanning Solutions purportedly misappropriated.

    f. <u>Interrogatory Twenty</u>. This interrogatory seeks numerous details about the business Success allegedly lost with regard to each customer or store, including the amount lost, the date Success began losing business, the basis for Success' contention, and the supporting documents.

    Rather than distinguishing among the various interrogatories, in its responsive submission, Success simply contends that much of the information may be found in documentation that it previously produced and that the interrogatories are unduly burdensome.

    Surprisingly, neither side has referred to Local Civil Rule 33.3, which governs the use of interrogatories. That rule provides that at the outset of discovery, interrogatories will be limited to "those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents." Additionally, during discovery, further interrogatories may be served only if they are "a more practical method of obtaining the information sought than a request for production or a deposition," or the Court so directs. Local Civil Rule 33.3(a), (b).

    As the Rule suggests, at least at this juncture, detailed interrogatories are disfavored. <u>See generally</u> 2 Michael C. Silberberg, Civil Practice in the Southern District of New York §§ 21:2, 21:3 (2d ed. 2011). In keeping with the Rule and this policy, Success will only be required to answer Interrogatories Seventeen and Twenty. Interrogatory Seventeen is modified to read: "Describe each of the trade secrets that Scanning Solutions allegedly misused." Interrogatory Twenty is modified to read: "For each category of damage for which Success is seeking recovery, set forth the amount that Success is seeking and describe how it has been computed."

    <u>Discovery Deadline</u>. My order dated February 8, 2013, indicated that the Court would enter a new scheduling order following the issuance of its discovery rulings. In light of the rulings set forth above, counsel are requested to confer and submit a proposed revised schedule for both consolidated actions by June 21, 2013.

    SO ORDERED.

Dated:  New York, New York
     June 12, 2013

                    FRANK MAAS
                  United States Magistrate Judge

Copies to all counsel via ECF